IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JASON HARTLEY HELM                                                    PLAINTIFF

v.                              Civil No. 3:21-cv-03035

CAPTAIN LOOKINGBILL, ET AL.                                          DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Jason Hartley Helm ("Helm"), filed this *pro se* action on May 12, 2021, pursuant to 42 U.S.C. § 1983.  (ECF No. 1).  On May 26, 2021, Helm's application to proceed *in forma pauperis* was granted.  (ECF No. 8).  An Amended Complaint was filed on July 19, 2021.  (ECF No. 14).

Before the Court are two motions for summary judgment: the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (ECF No. 52), filed by Defendants James Lookingbill, Aubry Ralls, Hunter Brantley, and Laralyn Koster; and Defendant Nurse Carrie Kauffman's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (ECF No. 66).  Helm has responded to both motions.  (ECF Nos. 65, 74).

The Motions are ripe for decision.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

## I.      BACKGROUND

Helm's Amended Complaint asserts three claims.  Helm describes his first claim as "deliberate indifference to medical needs, denial of medical care, conditions of confinement, cruel and unusual punishment mental anguish."  (ECF No. 14 at 4).  The claim is stated against

Defendants Nurse Carrie Kauffman, Hunter Brantley, and Captain Lookingbill[1] and refers to incidents occurring December 25, 26, and 27, 2020.  *Id.*  Specifically, Helm states that he fell in his cell on December 25, 2020, injuring his neck.  He alleges that Defendant Nurse Kauffman "said I did it on purpose and put me on suicide watch on the morning of 12-26-2020."  He further states that he "became violently ill vomiting blood."  Helm allegedly asked Officer Brantley for medical attention and "was denied for 12 hours."  Helm also alleges he was denied a shower and "was left laying in my vomit."  *Id.* at 5.  He states he "endured extreme mental anguish and was left in extreme pain for a long period of time while being denied medical attention."  *Id.*

Helm's second claim is stated against Defendants Captain Lookingbill and Officer Ralls with respect to incidents occurring January 8, 9, 17, 29, and 30, 2021, and on April 16, 2021.  (ECF No. 14 at 6).  Helm describes his claims as "conditions of confinement, mental anguish, cruel and unusual punishment."  *Id.*  He states "on above dates Officer Ralls has harassed, threatened, verbally assaulted, & intimidated me.  Every date above in every instance is backed by grievances."  Helm states further: "I exhausted the grievance procedure pointing out Officer Ralls insolence to his supervising officers (Lt. Herren) and (Captain Lookingbill) just to be threatened by them in the responses to same, while others were responded to by Lookingbill saying 'cameras were reviewed and situation handled.'"  *Id.*  Helm continues "[t]he mistreatment went on as allowed . . . causing extreme mental anguish . . . cruel & unusual punishment."  *Id.*

Helm's third claim is stated against Defendants Corporal Koster, Captain Lookingbill, and Nurse Kauffman.  (ECF No. 14 at 7).  The claim concerns an incident on January 18, 2021, which constituted denial of medical care and cruel and unusual punishment.  Helm alleges that he suffered a drop in his blood sugar due to hypoglycemia, further stating that he "told Cpl. Koster of this

---

[1] Helm's claims against Defendant Herren were dismissed without prejudice on December 22, 2021.  (ECF No. 56).

medical emergency . . . [and he] did nothing to help me." *Id.*  He further states: "I exhausted efforts for remedy through the grievance procedure only to be denied remedy by Cpt. Lookingbill as he supports & condones the actions of his employees leading to my pain & suffering . . . Koster denied medical attention to me.  Cpt. Lookingbill denied remedy through grievance procedure . . . ." *Id.*

In the instant motions, the Defendants' sole argument is that they are entitled to summary judgment because Helm did not exhaust his administrative remedies.  Helm denies that the Defendants are entitled to summary judgment.

In support of their motion, Defendants Lookingbill, Ralls, Brantley, and Koster submit the Affidavit of Captain James Lookingbill (ECF No. 52-1).  Attached to Lookingbill's affidavit are the following exhibits: grievances submitted by the Plaintiff (ECF No. 52-1 at 4); the Carroll County Detention Center Handbook, Rules and Regulations for Detainees (ECF No. 52-1 at 57); and the Carroll County Sheriff's Office Detention Center "Detainee Grievances" memo (ECF No. 52-1 at 78).

Defendant Kauffman submits two exhibits in support her motion: Exhibit 1 includes medical records and medical requests of Plaintiff; Exhibit 2 includes the same Affidavit of Lookingbill and attached exhibits filed by the Carroll County Defendants.  (ECF Nos. 66-1, 66-2).

Helm has responded to both motions.  (ECF Nos. 65, 74).  Although Helm attaches specific grievances and portions of the grievance policy already filed by the Defendants, Helm does not include an affidavit or a statement of disputed facts in response to the Defendants' motions.  The Court must, however, consider the facts set forth in a plaintiff's verified complaint when ruling on a summary judgment motion.  A verified complaint is the equivalent of an affidavit for summary judgment purposes.  *See, e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-95 (8th Cir. 2001).  As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his

pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion. *Id.* The Court will "piece[] together [Plaintiff's] version of the facts from the verified complaint. . . ." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983, *1 (D.S.D. Feb. 5, 2016). Those portions of the Defendants' statement of material facts that do not conflict with [Plaintiff's verified complaint] are deemed admitted." *Id*.

## II.     SUMMARY OF THE FACTS

Defendant Captain James Lookingbill was, at all relevant times, the Jail Administrator of, and worked at, the Carroll County Detention Center.[2]   (ECF No. 52-1).

In his Affidavit, Lookingbill states the Carroll County Detention Center has in place a grievance policy for inmates to utilize.  (ECF No. 52-1).

Lookingbill states "inmates can file a grievance on the kiosk or may handwrite a grievance or request."  (ECF No. 52-1 at 2).  In addition, "inmates can also access the Detainee Handbook on the kiosk which provides the basic rules and regulations, including the grievance procedure of the Detention Center."  *Id*.  Lookingbill also notes "an inmate can ask any Detention Center staff member how to file a grievance and/or appeal a grievance."  *Id*.

The "Carroll County Detention Center Handbook" is attached to the Affidavit of Captain James Lookingbill as Exhibit 2.  (ECF No. 52-1 at 57).  The section entitled "Rules and Regulations for Detainees," sets forth the following "Grievance Procedures":

> You are allowed to file a grievance if you feel you have been subjected to abuse or
> abridgment of your civil rights while being detained.  All grievances will be done
> on the kiosk in your cell block.

---

[2] The Affidavit of Captain James Lookingbill actually states: "During all times relevant, I was employed as the Jail Administrator and worked at the Arkansas County Detention Center."  (ECF No. 52-1). The Court finds this to be an unintentional misstatement with the intent being the "Carroll County Detention Center."

A grievance must be submitted within **eight hours** from the time the event complained of occurred. The grievance should include:

**A.** The date and approximate time of the event

**B.** The name(s) of the person(s) involved

**C.** The name(s) of any witness(es)

**D.** Pertinent details of the event

All grievances are investigated by the Jail Administrator or their designee. You will be told what action was taken on your complaint.  If your feel your grievance was improperly handled, you may appeal through the chain of command.

All grievances will follow the chain of command: Jail Commander, Jail Administrator and Chief Deputy.  Upon the order of the Sheriff the highest authority in the chain of command, in reference to grievances, will be the Chief Deputy.

(ECF No. 52-1 at 77).

Also attached to the Affidavit of Captain James Lookingbill is a "Carroll County Sheriff's Detention Center" memo titled "Detainee Grievances."  (ECF No. 52-1 at 78).  The memo states:

POLICY:

The Detention Center provides inmates with a system of redress for conditions related to confinement or medical care through its grievance procedure, which includes an appeal process.

GUIDELINES:

**I.**    Initiating a Grievance: Detainees are encouraged to informally resolve grievances between themselves and staff when possible.  If this is not possible, the detainee may write a grievance promptly following an incident.

1.   Issue the detainee a Grievance Form.  On the form, he provides the date, time, and description of the incident, and the name of the persons involved and witnesses.  The detainee signs and dates the form, and gives it to the staff member supervising him.

2.  Detainee Grievance Forms may not be accepted if they contain profanity, obscene, derogatory, or offensive language.  Only one detainee signature is allowed per Grievance Form.

3.  The receiving staff member forwards it, without delay, to the Shift Commander.

4.  The Shift Commander answering the grievance decides if a staff member or detainee has acted improperly, if the detainee's rights we violated, if privileges were unjustly denied, or if a crime was committed.  After reviewing the grievance, he writes his response on the detainee Grievance Form, giving findings that substantiate or disprove the complaint and a remedy, if applicable.  He signs, dates, and times his response, and makes one (1) copy.  The original is placed in the Detainee's file.

5.  The copy is delivered to the detainee within 72 hours, excluding weekends and holidays, after the grievance was first received.  If more than 72 hours is required to investigate the grievance, the detainee is notified of this in writing.  If the grievance concerns an emergency or the detainee's welfare is threatened, it is answered as soon as possible.

6.  If the detainee is dissatisfied with the response, he may appeal, in writing, to the next higher level in the chain of command.  The detainee must attach a copy of the initial response to the second detainee Grievance/Appeal Form so the next person up the chain of command can review the first answer.

7.  The procedure and time limits that apply to the initial grievance also apply to appeals.  The detainee may appeal, through the chain of command, to the Facility Administrator, or designee.  If the detainee is dissatisfied with the Facility Administrator's response, he may then appeal to the Sheriff, who will make the final decision.  If the detainee is dissatisfied with the Sheriff's response, he may then seek a judicial remedy.

(ECF No. 52-1 at 78-79).

Lookingbill states "[a]fter a review of [Plaintiff's] jail file, it is apparent that he never submitted any grievances concerning the December 25, 2020[,] incident by either utilizing the kiosk or a handwritten note."  (ECF No. 52-1 at 2).

Lookingbill also states "[a]fter a review of [Plaintiff's] jail file, it is apparent that he failed to complete the appeal process for the grievances filed in the second and third claims in accordance with the Carroll County Detention Center inmate grievance policy." (ECF No. 52-1 at 2).

Based upon the Court's review of Helm's grievances attached by the Defendants, General Request #7,935,983 appears related to Helm's first claim. (ECF No. 52-1 at 19). In this General Request, Helm seeks recoupment for a charge related to the December 25, 2020, incident. *Id*. Helm states in his summary judgment pleadings that he did not file a grievance with respect to his first claim. (ECF No. 65 at 1).

The following attached grievances appear relevant to Helm's second claim: Grievance #7,953,540 (ECF No. 52-1 at 4); Grievance #7,953,633 (*Id*. at 5); Grievance #8,019,149 (*Id*. at 8); Grievance #8,091,201 (*Id*. at 9); Grievance #8,111,411 (*Id*. at 12); Grievance #8,114,296 (*Id*. at 13); Grievance #8,664,954 (*Id*. at 15); and Grievance #8,665,054 (*Id*. at 16).

Lt. A. Herren responded to Helm's grievance #7,953,633 on 1/8/2021 at 10:03 a.m. Helm then filed an appeal on 1/10/2021 at 9:31 a.m. An appeal response was entered by Lt. A. Herren on 1/11/2021 at 10:45 a.m., stating: "Mr. Helm, Video has been pulled." (ECF No. 52-1 at 5).

Lookingbill responded to Helm's grievance #8,019,149 on 1/17/2021 at 4:37 p.m. Helm then filed an appeal on 1/19/2021 at 7:59 a.m. An appeal response was entered by Lookingbill on 1/19/2021 at 9:53 a.m., stating: "Mr. Helm, I have reviewed the video and have addressed the issue. This grievance is closed." (ECF No. 52-1 at 8).

Lookingbill responded to Helm's grievance #8,019,201 on 1/17/2021 at 4:37 a.m. Helm then filed an appeal on 1/19/2021 at 7:54 a.m. An appeal response was entered by Lookingbill on 1/19/2021 at 9:55 a.m., stating: "Mr. Helm, I have reviewed the video and have addressed the issue. This grievance is closed." (ECF No. 52-1 at 9).

Lt. A. Herren responded to Helm's grievance #8,111,411 on 1/31/2021 at 7:00 p.m.  Helm then filed an appeal on 1/31/2021 at 9:28 p.m.  An appeal response was entered by Lt. A. Herren on 2/1/2021 at 7:49 a.m., stating: "I will review the footage."  (ECF No. 52-1 at 12).

Lookingbill responded to Helm's grievance #8,114,296 on 2/1/2021 at 9:21 a.m.  No further appeal was taken.  (ECF No. 52-1 at 13).

Lt. A. Herren responded to Helm's grievance #8,664,954 on 4/16/2021 at 12:08 p.m.  No further appeal was taken.  (ECF No. 52-1 at 15).

Lt. A. Herren responded to Helm's grievance #8,665,054 on 4/19/2021 at 12:08 p.m.  Helm then filed an appeal on 4/23/2021 at 11:50 a.m.  An appeal response was entered by Lt. A. Herren on 4/23/2021 at 2:51 p.m., stating, in part, "I find Officer Ralls conduct to be within policy and this grievance is closed."  (ECF No. 52-1 at 16).

The following attached grievance appears relevant to Helm's third claim: Grievance #8,028,342 (ECF No. 52-1 at 10).  Lt. A. Herren responded to this grievance on 1/19/2021 at 8:37 a.m.  Helm then filed an appeal on 1/19/2021 at 9:02 a.m.  An appeal response was entered by Lookingbill on 1/19/2021 at 10:14 a.m., stating, in part, "In short I will speak with the medical department.  You will need to put in a medical request, when medical tells us to test you, we will. Your commissary account will be charged for each test as well as an[y] medical related charges." (ECF No. 52-1 at 10-11).

### III.    LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "Once

a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.    DISCUSSION

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim

9

to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

As previously noted, the instant motions for summary judgment are based solely on Helm's alleged failure to exhaust his administrative remedies.[3] Regarding Helm's first claim, the Defendants contend, and the undisputed proof shows, that Helm failed to file any grievance related to his first claim of denial of medical care and conditions of confinement concerning an incident spanning December 25-27, 2020. Helm concedes that he did not file a grievance concerning the incident, explaining "when let into population I was very dehydrated, malnourished, and mostly delusional from the events . . . [and that his] time to file a grievance had expired." (ECF No. 65). This argument, contained not in an admissible affidavit, but only in Plaintiff's unverified summary judgment response, is not sufficient to support an exception to the exhaustion requirement. Accordingly, the Defendants are entitled to summary judgment with respect to Helm's first claim.

---

[3] Defendant Kauffman's summary judgment papers include some facts and arguments on the merits of Plaintiff's claims. However, viewing the totality of her arguments, including the Motion's title and prayer for relief, the Court will limit its review to the exhaustion issue. (ECF Nos. 66, 67, 68).

As for Helm's second and third claims, the Defendants argue that although Helm in fact filed grievances, he "failed to complete the appeal process of said grievances in accordance with the grievance policy of the Carroll County Detention Center." (ECF Nos. 52, 66). Defendants further indicate that to fully exhaust a grievance a final decision on any appeal will proceed through "the Sheriff, who will make the final decision." (ECF No. 52-1 at 2).

In response, Helm points to his grievances, noting that many were appealed. (ECF No. 52-1 at 5, 8, 9, 10, 12, 16; ECF No. 14 at 6, 8). Helm further argues that although the Defendants contend that an appeal must proceed to the Sheriff to be fully exhausted, "the grievance process at this facility will not allow 'an appeal to the sheriff.'" (ECF No. 74 at 1). Helm points to the "Carroll County Detention Center Handbook," which states: "If your (sic) feel your grievance was improperly handled, you may appeal through the chain of command." (ECF No. 52-1 at 77). The Handbook continues: "All grievances will follow the chain of command: Jail Commander, Jail Administrator and Chief Deputy. Upon the order of the Sheriff the highest authority in the chain of command, in reference to grievances, will be the Chief Deputy." *Id*.

Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). However, the PLRA only requires exhaustion of "such administrative remedies as are available." 42 U.S.C. § 1997e(a).

As the Eighth Circuit recognized in *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018):

> "The availability of a remedy, according to the Supreme Court, is about more than just whether an administrative procedure is 'on the books.' *Ross v. Blake*, — U.S. —, 136 S.Ct. 1850, 1859, 195 L.Ed.2d 117 (2016). An administrative remedy is 'not capable of use,' and therefore unavailable, for example, 'when prison administrators thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation.' *Id*. at 1859-60."

11

Failure to exhaust is an affirmative defense that must be proven by the Defendants. *Porter v. Sturm*, 781 F3d 448, 451 (8th Cir. 2015) (citing *Jones*, 549 U.S. at 211-12). Further, the Defendants' burden includes showing that the administrative remedies were actually available to the Plaintiff. *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001).

From the record before the Court, the Carroll County Detention Center grievance appeal process is unclear and ambiguous. While the "Detainee Grievances" memo (ECF No. 52-1 at 78) indicates that a final appeal must proceed through the Sheriff, the Carroll County Detention Center Handbook indicates that an appeal must go through the "chain of command" designee established by the Sheriff. (ECF No. 52-1 at 77). The proof further shows that on at least two occasions, Defendants' responses to Helm's grievance appeals conclude with "[t]his grievance is closed." (ECF No. 52-1 at 8, 9). Because failure to exhaust is an affirmative defense that must be proved by the Defendants, and because Defendants' burden includes showing that administrative remedies were actually available to Helm, the undersigned finds that Defendants' exhaustion arguments concerning Helm's second and third claims must fail.

## V.   CONCLUSION

For the reasons stated above, it is recommended that Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (ECF No. 52) and Defendant Nurse Carrie Kauffman's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (ECF No. 66) be **GRANTED in PART and DENIED in PART**, as set forth below:

- the motions should be **GRANTED regarding Helm's first claim concerning the events of December 25, 26, 27, 2020**; and,

- the motions should be **DENIED regarding Helm's second and third claims**.

12

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of May 2022.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE